# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| NATIONAL WILDLIFE REFUGE ASSOCIATION, DRIFTLESS AREA LAND CONSERVANCY, WISCONSIN WILDLIFE FEDERATION, and DEFENDERS OF WILDLIFE | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| RURAL UTILITIES SERVICE, CHRISTOPHER MCLEAN, Acting Administrator, Rural Utilities Service, UNITED STATES FISH AND WILDLIFE SERVICE, CHARLES WOOLEY, Midwest Regional Director, and SABRINA CHANDLER, Manager, Upper Mississippi River National Wildlife and Fish Refuge, UNITED STATES ARMY CORPS OF ENGINEERS, LIEUTENANT GENERAL SCOTT A. SPELLMON, Chief of Engineers and Commanding General, U.S. Army Corps of Engineers, COLONEL STEVEN SATTINGER, Commander and District Engineer, Rock Island District, U.S. Army Corps of Engineers, and COLONEL KARL JANSEN, Commander and District Engineer, St. Paul District, U.S. Army Corps of Engineers, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Nos. 21-cv-00096-wmc & 21-cv-00306-wmc, Consolidated. |
| Defendants, | ) ) ) | |
| and | ) ) | |
| AMERICAN TRANSMISSION COMPANY, LLC, DAIRYLAND POWER COOPERATIVE, & ITC MIDWEST LLC, | ) ) ) ) | |
| Intervenor-Defendants. | ) ) | |

## PLAINTIFFS' RESPONSE TO MOTION TO STRIKE THE DECLARATION OF DANIEL ASHE AND PLAINTIFFS' STATEMENT OF PROPOSED FACTS

1

## INTRODUCTION

On October 18, 2021, the Intervenor-Defendant Transmission Companies filed a motion to strike the Declaration of Daniel Ashe and Plaintiffs' Statement of Proposed Facts. Dkt. 113. The Federal Defendants similarly argue that the Court should "not consider" Plaintiffs' Statement of Proposed Facts. Dkt. 116. Plaintiffs filed a Statement of Proposed Facts in accordance with this Court's procedures that they believed to apply here, absent any order from the Court stating that such procedures should *not* be followed. The Transmission Companies' primary complaint about Plaintiffs' Statement of Proposed Facts seems to be that Plaintiffs attached member declarations to establish standing, which is wholly proper. Moreover, the Transmission Companies themselves filed two "extra-record" declarations and 10 exhibits in support of their motion for summary judgment. The Transmission Companies also move to strike the declaration of Daniel Ashe, a board member of the National Wildlife Refuge Association (NWRA), whose declaration supports NWRA's standing. Again, standing declarations are wholly appropriate and the Transmission Companies' motion to strike should be rejected.

## ARGUMENT

**I.  This Court Should Not Strike the Statement of Proposed Facts Attached to Plaintiffs' Motion for Summary Judgment.**

Plaintiffs filed a Statement of Proposed Facts to support their Motion for Summary Judgment because they believed it was required pursuant to this Court's procedures. In the related case in this Court before the Honorable Judge Conley, *DALC et al. v. Huebsch et al.*, the Court provided Plaintiffs Driftless Area Land Conservancy and Wisconsin Wildlife Federation with a "Preliminary Pretrial Packet in Cases Assigned to District Judge William M. Conley." Dkt. 54, Case No. 19-cv-1007-wmc. That Packet provided "Summary Judgment Procedures,"

which state that a motion for summary judgment must be supported by a separate statement of proposed findings of facts.

The Transmission Companies are correct that the Joint Pretrial Conference Statement submitted in this case included a *proposal* that statements of proposed findings of fact need not be submitted. However, to the best of Plaintiffs' knowledge and recollection, this Court never apparently ruled on the issue. The text order summarizing the preliminary pretrial conference does not address this proposal. Dkt. 42. Moreover, in another recent environmental administrative record review case, the plaintiffs requested clarification on whether proposed findings of fact were required, and the Court stated that "[b]ecause the administrative record is substantial, the court would appreciate it if each side filed proposed findings of fact." Dkt. 45 (Text Only Order), *Sauk Prairie Conservation Alliance v. U.S. Dep't of the Interior*, Case No. 3:17-cv-00035-jdp (Sept. 27, 2017). Therefore, Plaintiffs' understanding was that they should provide a Statement of Proposed Facts along with their Motion for Summary Judgment to aid the Court in its review of their lengthy memorandum in support of the motion.

Listing citations for factual assertions in a separate document rather than in the text of the memorandum itself does not prejudice any party. This was not, for example, an attempt to bypass a page limit. It is simply a formatting option that Plaintiffs believed was required under Judge Conley's standard Summary Judgment Procedures and would help streamline the Court's review.

What the Transmission Companies seem to actually object to is not the format of a separate document, but the fact that Plaintiffs organizations filed declarations from their members to establish that Plaintiffs have standing to bring their lawsuit. Again, this was not some nefarious plot, but rather standard procedure in essentially any case brought by environmental organizations. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC),*

*Inc.*, 528 U.S. 167, 183 (2000) (finding that environmental organizations had standing based on affidavits from organization members); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992) (explaining that environmental organizations "had to submit affidavits or other evidence" at the summary judgment stage to establish standing); *Sauk Prairie Conservation All. v. U.S. Dep't of Interior*, 320 F. Supp. 3d 1013, 1021 (W.D. Wis. 2018), *aff'd sub nom. Sauk Prairie Conservation All. v. United States Dep't of the Interior*, 944 F.3d 664 (7th Cir. 2019) (finding that environmental organization established that individual members would have standing to sue through the submission of standing member affidavits); *Nat. Res. Def. Council v. Illinois Power Res., LLC,* 202 F. Supp. 3d 859, 866 (C.D. Ill. 2016) (finding standing based on "declarations and deposition testimony from members" of environmental organizations).

In order to establish standing, Plaintiffs must demonstrate (1) an injury in-fact, (2) that is fairly traceable to the challenged conduct, and (3) seek a remedy that is likely to prevent or redress the injury. *Uzuegbunam v. Preczewski,* 141 S. Ct. 792, 797 (2021). An organization may rely on associational standing when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The clearest way for Plaintiffs to establish that their members have standing to sue in their own right is to submit standing declarations establishing the injury to those members, which are necessarily "extra-record." In order to establish injury, the declarations necessarily must describe both the members' interests and how those interests would be impaired. In fact, the Transmission Companies argued in their merits response to Plaintiffs' Motion for Summary

Judgment that Plaintiffs' standing member declarations do not include *enough facts* to establish standing. Dkt. 112 at 5–6. Once again, the Transmission Companies attempt to "have it both ways": first, they argue that the Plaintiffs' declarations have not provided enough information, then they argue that the declarations should not have been filed at all.

The Transmission Companies perhaps confuse Plaintiffs' arguments *on standing* with their arguments *on the merits.* Extra-record evidence generally is not permitted to support *merits* arguments in an Administrative Procedure Act case. However, it is certainly permitted to establish standing. The Transmission Companies argue that it was improper for the section of the brief entitled "Adverse Environmental Impacts of the Proposed CHC Transmission Line and High Towers" to include citations to standing member declarations to support the assertion that construction of the transmission line would likely disturb wildlife, including bald eagles. Dkt. 114 at 10–11. The Transmission Companies seem to overlook that that section of the brief was included to establish standing. The very first sentence is, "Preconstruction and construction work will cause significant damage to the environment, resulting in injury to Plaintiffs' members' use and enjoyment of the environment and causing direct harm to Plaintiffs' organizational interests." Dkt. 71 at 10. It is entirely appropriate to include citations to the declarations of Plaintiffs' standing members.

For example, the Transmission Companies strenuously object to the citation to standing member declarations on the issue of wildlife disturbance from construction of the transmission line.

- **Mark Mittelstadt, a DALC board member and professional forester with decades of experience in ecologically-based woodland management,** explains that he is very familiar with an active bald eagle nest located on Highway 18 / U.S. 151 (*i.e.*, on the transmission line

route) and enjoys viewing the nest and seeing bald eagles fly around in the area. Dkt. 83. He

is concerned that the noise and disturbances from transmission line construction will disturb

the nesting eagles. These facts and other facts in his declaration demonstrate that he has

standing, which, in turn, supports DALC's associational standing.[1]

- **Kerry Beheler, a WWF member who worked for many years as a Wildlife Health Specialist with the Wisconsin Department of Natural Resources,** states in her declaration that she is an avid birder, that she uses and enjoys the Upper Mississippi River National Wildlife Refuge, that the Refuge provides critical habitat for migratory birds (including golden and bald eagles), and that the construction of the CHC transmission line would have severe negative impacts on wildlife, including birds, and would detract from her enjoyment of the Refuge. Dkt. 79. This establishes that Ms. Beheler has standing and in turn, establishes associational standing for WWF.

The Transmission Companies argue that the federal agency Defendants considered

impacts to eagles in the EIS and included various requirements to attempt to minimize or address

impact. *First,* the EIS does not say that there will be *no* impacts on bald eagles. Indeed, there

would be no need to "minimize" impacts to bald eagles if impacts were not expected in the first

place. The EIS specifically acknowledges that if the right-of-way is within 660 feet of a nest,

then an eagle take permit may be required (ROD005115), which would then *allow* interference

with or the death of the eagles. 50 C.F.R. § 22.26. *Second,* the content of the EIS is not

dispositive on whether or not there will be impacts sufficient to support standing. If it were, an

---

[1] The Transmission Companies also argue that Mark Mittelstadt does not claim to be an eagle specialist. Yet that would only go to the weight that the Court might afford his declaration, not whether it is permissible to file the declaration. Furthermore, a standing plaintiff's concerns need "not be based on . . . scientific evidence of probable consequences in order to be reasonable." *Nat. Res. Def. Council v. Illinois Power Res., LLC*, 202 F. Supp. 3d 859, 870 (C.D. Ill. 2016).

EIS could state that there would be no impacts and preclude anyone from challenging it. Plaintiffs have every right to submit their own declarations alleging injuries to support standing.

Apart from declarations from Plaintiff organization members, Board members, and staff, all of which go to standing, there are only three other "extra-record" sources cited in Plaintiffs' Statement of Proposed Facts[2]:

- The Environmental Assessment on the proposed re-route of the CHC transmission line, which Plaintiffs cited in providing contextual information on recent changes to the proposed project (as noted below, the Transmission Companies *also* provided non-record documents related to new developments in the project).

- A blog entry on ATC's own website about ATC developing a battery storage project to provide transmission services, which shows that battery storage alternatives are possible and is relevant to redressability—that is, if the Court ordered the Federal Defendants to go back and consider non-wires alternatives to the CHC transmission line, they might choose a less-damaging non-wires option (like battery storage) as the selected alternative.

- A copy of the Plaintiff Driftless Area Land Conservancy's (DALC) conservation easement on the historic Thomas Stone Barn property, which supports the finding that DALC has organizational standing on its own behalf, in addition to associational standing through harm to its members.

Moreover, the Transmission Companies *themselves* filed two declarations and *ten* "extra-record" exhibits in support of their Motion for Summary Judgment.[3] Their strenuous arguments about the inappropriateness of any "extra-record" evidence falls flat and should be rejected in

---

[2] These are the three attachments to the declaration of Attorney Ann Jaworski. Attorney Jaworski's declaration simply authenticated the copies of the documents attached.
[3] The Transmission Companies also filed 16 declarations in support of their opposition to Plaintiffs' Motion for Preliminary Injunction.

light of their own filings. Even if the Court determines that Plaintiffs should not have filed a Statement of Proposed Facts, striking the Statement wholesale would unduly prejudice Plaintiffs, as that would eliminate all citations in their brief. The Transmission Companies' alternative suggestion to completely ignore all declarations that Plaintiffs filed (most of which the Transmission Companies do not even mention in their memorandum in support of their motion to strike) is similarly inappropriate.

## II.    This Court Should Not Strike the Declaration of Daniel Ashe.

The Transmission Companies also move to strike the Declaration of Daniel Ashe, Dkt. 74. Mr. Ashe served as the Director of the U.S. Fish and Wildlife Service from February 2011 to January 2017, and he is currently a member of the NWRA board. The Transmission Companies argue that Mr. Ashe's declaration provides no information relevant to standing, Dkt. 114 at 3, and that it seeks to improperly offer legal opinions, Dkt. 114 at 4. To the contrary, Mr. Ashe's declaration supports the standing of Plaintiff NWRA.

Plaintiffs' brief in support of their Motion for Summary Judgment includes a single paragraph in the standing section that cites to Mr. Ashe's declaration:

> Dan Ashe is a member of the Board of Directors of the National Wildlife Refuge Association ("NWRA"). SPF at ¶ 64. Mr. Ashe served as the Director of the USFWS from June 2011 to January 2017, in addition to previously working in other roles at USFWS. SPF at ¶ 64. Mr. Ashe is concerned that allowing the massive transmission line and high towers through the Upper Mississippi River National Wildlife and Fish Refuge would set an unfortunate precedent for allowing additional transmission lines and rights-of-way through the protected Refuges. SPF at ¶ 65. In Mr. Ashe's professional opinion, allowing this new right-of-way through the Refuge would be precedent-setting because he is not aware of any similarly large new rights-of-way that have been allowed through the National Wildlife Refuges since the USFWS's compatibility regulations were adopted in 2000. SPF at ¶ 66.

Dkt. 71 at 14. This is an unremarkable standing explanation establishing NWRA's organization interest and Mr. Ashe's personal interest in the integrity of the National Wildlife Refuge System.

Mr. Ashe explains his concern that allowing the huge CHC transmission line to be built through the Upper Mississippi River National Wildlife and Fish Refuge would harm this specific protected Refuge, and would also set a dangerous precedent for harming National Wildlife Refuges across the country. Plaintiffs' brief does not cite to Mr. Ashe's declaration anywhere in the merits discussion.  The Transmission Companies' motion to strike is without merit in this respect as well.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Intervenor-Respondent Transmission Companies' motion to strike.

Respectfully submitted this 26th day of October, 2021.

*/s/ Howard A. Learner*
Howard A. Learner
Scott Strand
Rachel L. Granneman
Ann Jaworski
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
T: (312) 673-6500
F: (312) 795-3730
HLearner@elpc.org
SStrand@elpc.org
RGranneman@elpc.org
AJaworski@elpc.org

*Counsel for Plaintiffs National Wildlife Refuge Association, Driftless Area Land Conservancy, Wisconsin Wildlife Federation, and Defenders of Wildlife*

*/s/ Lindsay Paige Dubin*
Lindsay Paige Dubin
*Admitted Pro Hac Vice*
Defenders of Wildlife
1130 17th Street NW
Washington, D.C. 20036
T: (202) 772-3234
ldubin@defenders.org

*Counsel for Plaintiff Defenders of Wildlife*

*/s/ Robert M. Morgan*
Robert M. Morgan
*Admitted Pro Hac Vice*
National Wildlife Refuge Association
415 E. Cape Shores Dr.
Lewes, DE 19958-3109
T: (301) 466-8915
RMorgan@RefugeAssociation.org

*Counsel for Plaintiff National Wildlife Refuge Association*