PERKINSCOIE

700 13th Street, NW
Suite 800
Washington, D.C. 20005-3960

T. +1.202.654.6200
F. +1.202.654.6211
PerkinsCoie.com

October 28, 2021

Thomas C. Jensen
TJensen@perkinscoie.com
D. +1.202.654.1718
F. +1.202.624.9599

**VIA ECF**

U.S. District Court Judge William Conley
Western District of Wisconsin
120 North Henry Street
Madison, WI 53703

Re:   Case Nos. 21-cv-00096-wmc & 21-cv-00306-wmc (consolidated)
      *Nat'l Wildlife Refuge Ass'n, et al. v. Rural Utilities Service, et al.*
      **Construction Activities in Wisconsin in Next 30 Days**

Dear Judge Conley:

Pursuant to the hearing held on Plaintiffs' motion for a preliminary injunction[1] last Friday in the above-captioned matter and the status report that the Co-owners submitted shortly thereafter,[2] I am writing to update the Court regarding the construction of the Cardinal-Hickory Creek 345 kV Transmission Line Project ("Project") in Wisconsin and provide requested information regarding the Co-owners' damages from a 30- to 60-day delay in Project construction.[3] As discussed at the hearing last Friday, construction in Iowa has been underway for over six months and will continue, except for construction within the Refuge, which will not begin before October 2022.

In their October 22, 2021 status report, the Co-owners committed not to conduct any Project-related construction activities that are subject to the U.S. Army Corps of Engineers ("Corps") Utility Regional General Permit ("URGP") verifications prior to November 1, 2021. In a showing of cooperation and good faith, the Co-owners hereby extend that commitment for four full weeks while the Court considers the pending motions for summary judgment. Specifically, prior to November 29, the Co-owners will not conduct *any* construction work within jurisdictional waters (which include wetlands), subject to the URGP verifications that the Corps issued for the Project in Wisconsin.

The rest of this letter and the declarations being filed concurrently herewith provide: an explanation of how the Co-owners intend to perform construction work on the Project starting in November; the impact to the Co-owners of avoiding construction work in jurisdictional waters during that

---

[1] *See* ECF No. 97.
[2] *See* ECF No. 149.
[3] The Co-owners include American Transmission Company LLC and ATC Management Inc. ("ATC"), ITC Midwest LLC ("ITC"), and Dairyland Power Cooperative.

The Hon. William Conley
October 28, 2021
Page 2

timeframe; and the additional Project costs and damages the Co-owners would incur if this Court enjoined all construction in Wisconsin for 30 to 60 days. To explain how the URGP verifications fit into the Co-owners' construction plans, I am first providing the Court with some regulatory background regarding the URGP and Project-related verifications.

**Background on the URGP**

The Co-owners and the Federal Defendants provided substantive and regulatory background regarding the URGP verifications for the Project in briefing accompanying their motions for summary judgment.[4] To summarize, the Clean Water Act ("CWA") prohibits "the discharge of dredged or fill material" into "navigable waters" without a permit from the Corps.[5] The CWA defines "navigable waters" as "Waters of the United States,"[6] which the Corps has in turn defined as "jurisdictional waters," including certain wetlands.[7] The Corps has also specifically defined what constitutes the discharge of dredged or fill material (i.e., "regulated activities") into jurisdictional waters.[8]

The Corps may issue "general permits" for categories of activities that are substantially similar and involve discharges of dredged or fill material into jurisdictional waters if (among other things) the activities will cause minimal adverse environmental effects.[9] In this case, the relevant general permit authorizing regulated activities in jurisdictional waters is the Corps' St. Paul District URGP, under which the Corps issued the Project-specific verifications.

The URGP covers (among other things) regulated activities associated with the construction of utility lines, substation facilities, and permanent and temporary access roads for those lines and facilities.[10] The URGP requires permittees to seek coverage thereunder by submitting a pre-construction notification ("PCN") for certain regulated activities, including "[a]ll single and complete projects where the temporary impacts are proposed to impact 0.5 acre or greater of waters of the US, including wetlands."[11] The Corps responds with a written verification to confirm whether the regulated activities are covered by the URGP.[12]

---

[4] *See* ECF No. 89 at 54–58; ECF No. 93 at 26–39.
[5] *See* 33 U.S.C. §§ 1311(a), 1344(a).
[6] 33 U.S.C. § 1362(7).
[7] 33 C.F.R. § 328.3(a), (c)(1).
[8] *See* 33 C.F.R. § 323.2(c)–(f).
[9] 33 U.S.C. § 1344(e)(1); 33 C.F.R. § 330.1.
[10] *See* USACE009045–46.
[11] *See* UASCE009007, USACE009049.
[12] *See* USACE009048; *see also* 33 C.F.R. §§ 330.1(e)(1), 330.6(a) (permittees may be required to request confirmation that an activity complies with a general permit).

The Hon. William Conley
October 28, 2021
Page 3

In September 2019, ATC and ITC submitted PCNs to the Corps' St. Paul District for coverage under the URGP for Project-related regulated activities in Wisconsin.[13] Based on field surveys conducted in June 2017, the PCNs included wetland delineation data that specifically identified the location and extent of jurisdictional wetlands along the Project route in Wisconsin.[14] In December 2019, the Corps issued two verifications confirming that Project-related regulated activities in Wisconsin are authorized under the URGP.[15] The Co-owners conducted additional delineations in 2020 to confirm wetland boundaries in areas that were previously inaccessible for field survey and where site conditions have changed. Due to altered landscape conditions, primarily previously farmed areas that now exhibit wetland characteristics, there were small changes to some of the delineated wetland boundaries. To address these changes, ATC submitted an addendum (re-verification) request to the Corps in March 2021 for a slight increase in temporary and permanent wetland impacts. For ITC, the updated delineations resulted in decreased wetland impacts, and ITC notified the Corps accordingly in July 2021.

The regulated activities authorized under the 2019 verifications and 2021 addendum request will result in only 0.022 acres of permanent impacts and up to 15.54 acres of temporary impacts to wetlands subject to the Corps' jurisdiction.[16] The permanent impacts are associated with the construction of foundations for ten new transmission structures. The temporary impacts are associated with use of timber matting to provide construction vehicles with safe access to the construction area and minimize impacts to soil and vegetation.[17] The Corps does not regulate—and thus, permits/verifications are not required for—the mowing or removal of vegetation above the ground "where the activity neither substantially disturbs the root system nor involves mechanized pushing, dragging or other similar activities that redeposit excavated soil material."[18]

---

[13] *See* USACE004819 (ATC notice for regulated activities for that portion of the Project between the Hill Valley and Cardinal Substations); USACE004219 (ITC notice for regulated activities for that portion of the Project between the Hill Valley Substation and the Mississippi River).
[14] *See* USACE004229 (describing wetland delineation for Mississippi River–Hill Valley segment); USACE004829 (describing wetland delineation for Hill Valley-Cardinal segment).
[15] The verifications and associated memoranda describing the regulated activities to be conducted in jurisdictional waters for the Project are available at USACE000679–85, USACE000686–91, USACE000693–758, USACE000759–000809.
[16] The 2019 verification letters authorized 0.02 acres in permanent impacts and 13.6 acres in temporary impacts. *See id.* ATC's March 2021 addendum seeks coverage for an additional 0.002 acres of permanent impacts and an additional 1.94 acres of temporary impacts. *See* Oct. 28, 2021 Decl. of Amy Lee ("Lee Decl.") ¶ 12. ITC's July 2021 notice to the Corps identified no additional permanent impacts and a 4.2-acre reduction in temporary impacts. *See* Oct. 28, 2021 Decl. of Mark Rothfork ("Rothfork Decl.") ¶ 3.
[17] *See* USACE000679–80, USACE000686–87.
[18] *See* 33 C.F.R. § 323.2(d)(2).

The Hon. William Conley
October 28, 2021
Page 4

Given the foregoing, the Project will have a *de minimis* impact on jurisdictional wetlands. The total length of the Project in Wisconsin is approximately 87 miles—more than 95 percent of which follows existing utility, transportation, or railroad rights-of-way ("ROW"). The Project ROW will be generally 150 feet wide.[19] This means that the Project's permanent and temporary impacts to jurisdictional wetlands (15.562 acres, all told in Wisconsin) constitute less than one-tenth of one percent (0.1) of the total Project ROW in Wisconsin.

**Project-Related Construction Activities Within the Next 30 Days**

Until November 29, 2021, the Co-owners will confine construction activities to utility-owned substation properties and the portion of the Project known as Segment E-3, which begins at the Cardinal Substation, located in Middleton, and runs southwest to Mount Horeb.[20] There are approximately 242 acres of land within the Project ROW along this segment. Approximately 40 percent of the land cover is classified as agricultural, 32 percent is woodland, 17 percent is grassland, and four percent is wetland, with the balanced classified as developed land. There are approximately 15 jurisdictional wetland complexes along Segment E-3, which cover approximately 10.4 acres of land in the ROW. The Project-specific verifications authorize temporary impacts (timber matting) on approximately 6.2 acres of those wetlands and permanent impacts (transmission structures) on approximately 0.012 acres of those wetlands.[21]

Until November 29, 2021, the Co-owners will not conduct *any* construction activities in jurisdictional wetlands. This means that the Co-owners will not place any permanent or temporary fill (including timber matting) or engage in any vegetation clearing in the wetlands subject to the Corps' jurisdiction along Segment E-3 or at substation properties.[22] Normally, crews would work in a linear fashion along the Project ROW. But now, when crews arrive at a portion of the Project ROW where a jurisdictional wetland is present, they will avoid and postpone any construction work within that wetland, including moving equipment and crews back in the direction from which

---

[19] *See* Lee Decl. ¶ 3.
[20] *See* Oct. 28, 2021 Declaration of Sarah Justus ("Justus Decl.") ¶ 14 Ex. A (depicting Segment E-3). ATC plans to work within utility-owned property at the Nelson Dewey and Hill Valley Substations. *Id.*
[21] The December 2019 verification that the Corps issued authorized approximately 4.5 acres of temporary impacts and 0.01 acres of permanent impacts in the wetlands along Segment E-3. The March 2021 addendum seeks a coverage for an additional 1.7 acres of temporary impacts and 0.002 acres of permanent impacts in those wetlands. Lee Decl. ¶¶ 10, 12.
[22] As a practical matter, permanent fill would not occur earlier than February 2022, when the Co-owners plan to mobilize crews for foundation work on the transmission structures. (*See* ECF No. 129, ¶ 22; ECF No. 132, ¶ 15).

The Hon. William Conley
October 28, 2021
Page 5

they came, loading them for transport, and then driving to the next ROW access point that does not cross a wetland area.[23]

This disruption in the construction sequence will come with additional costs. For instance, along Segment E-3, the Co-owners estimate crews will need to de-mobilize and re-mobilize around approximately 10 of the 15 wetlands within the next four weeks. These efforts will increase total construction costs by approximately $140,000. Additional details regarding this de- and re-mobilization process are included in the declaration of Sarah Justus being submitted to the Court concurrently with this letter.

Moreover, this type of avoidance will only be feasible for a limited time before it materially slows progress on Project construction, leading to more significant costs due to suspension of construction work. Accordingly, after the 30-day period has expired (i.e., after November 29), crews will "re-mobilize" to the previously avoided areas to complete the previously scheduled work.

To be clear, the fact that the Co-owners are avoiding any construction activities in jurisdictional wetlands should not be construed as a concession that the Corps regulates any and all activities in those wetlands. As noted previously, the Corps only regulates the "discharge of dredged or fill material" into those wetlands. The Corps does not regulate—and thus, the Co-owners do not need Corps' authorization for—above-ground vegetation clearing activities in jurisdictional wetlands "where the activity neither substantially disturbs the root system nor involves mechanized pushing, dragging or other similar activities that redeposit excavated soil material."[24] Nonetheless, the Co-owners are voluntarily agreeing to avoid *any* construction work in these wetlands (including unregulated vegetation clearing) as a showing of good faith and cooperation to the Court and other parties.

**The Cost of a 30 or 60-Day Injunction**

At the Court's request, the Co-owners are also providing an estimate of the increased construction costs and damages they would incur if the Court were to issue an injunction halting *all* construction on the Project in Wisconsin for the next 30 or 60 days. A 30-day injunction would increase construction costs by approximately $3.1 million and a 60-day injunction would increase construction costs by approximately $12.72 million. These increased costs would be passed onto the Co-owners' transmissions customers and, consequently, to their retail electric ratepayers. Additional details regarding these increased costs are set forth in the declarations of Sarah Justus and Shawn Mathis, which are being submitted to the Court concurrently with this letter.

---

[23] *See* Justus Decl. ¶¶ 16–19 & Ex. C.
[24] *See* 33 C.F.R. § 323.2(d)(2).

The Hon. William Conley
October 28, 2021
Page 6

In addition to these increased construction costs, ATC would also suffer damages in the form of lost revenue and added financing costs for money it has spent to date on the Project, as well as for money it spends on the Project while the injunction is in place. ATC estimates that these financial losses would amount to $253,000 for a 30-day injunction and $536,000 for a 60-day injunction. Additional details regarding ATC's damages are set forth in the declaration of Michael Degenhardt, which is being submitted to the Court concurrently with this letter.

Sincerely,

Thomas C. Jensen

*Attorney for Intervenor-Defendants American Transmission Company LLC by its corporate manager, ATC Management Inc., ITC Midwest LLC and Dairyland Power Cooperative*

cc:   All counsel of record (via ECF)

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2021, I electronically filed the foregoing document with the Clerk of Court using the Court's ECF system, which will serve the document on all counsel of record registered for electronic filing in the above-captioned proceeding.

Dated: October 28, 2021

                                                                                              */s/ Thomas C. Jensen*
                                                                                              Thomas C. Jensen