IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NATIONAL WILDLIFE REFUGE ASSOCIATION,
et al.,

        Plaintiffs,

  v.

RURAL UTILITIES SERVICE, et al.,

        Federal Defendants,

AMERICAN TRANSMISSION COMPANY, LLC,
et al.,

        Intervenor-Defendants.

Case No. 3:21-cv-00096-wmc
  (lead)

---

NATIONAL WILDLIFE REFUGE ASSOCIATION,
et al.,

        Plaintiffs,

  v.

U.S. ARMY CORPS OF ENGINEERS, et al.,

        Federal Defendants,

AMERICAN TRANSMISSION COMPANY, LLC,
et al.,

        Intervenor-Defendants.

Case No. 3:21-cv-00306-wmc
  (consol.)

---

**FEDERAL DEFENDANTS' BRIEF ON CONTENTS OF FINAL JUDGMENT**

I.      INTRODUCTION

Before the Court is the question of what, if any, additional relief Plaintiffs are entitled to beyond the declaratory relief already issued in this challenge under the APA. *See* January 14, 2022 Op. & Order, ECF No. 175. This Court concluded on summary judgment that RUS's EIS contained an inadequate statement of purpose and need and that FWS's withdrawn Compatibility Determination and the Utilities' request for a land exchange, which FWS was still considering as of issuance of the Court's order, would be unlawful. The Court granted summary judgment for the U.S. Army Corps of Engineers on Plaintiffs' claims that certain nationwide and general permit authorizations are unlawful.[1]

As to Plaintiffs' claim against RUS, the Court should vacate and remand RUS's record of decision to the agency. The Court should not issue an injunction because vacating and remanding will have the same effect as an injunction, making the extraordinary remedy of injunctive relief unnecessary, as directed by the Supreme Court in *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010). Moreover, Plaintiffs have not made a showing of irreparable harm—an essential element for permanent injunctive relief—resulting from RUS's record of decision. Indeed, RUS's record of decision has no practical impact, because the financing decision it

---

[1] Accordingly, this brief does not address the claims against the Corps and Plaintiffs are thus not entitled to any relief with respect to any Corps agency action. The Court's previous preliminary injunction against activities under the Utility Regional General Permit may have terminated by its own terms. That order stated that such activities were enjoined "until the issuance of an opinion and order on summary judgment." Nov. 1, 2021 Op. & Order, ECF No. 160 at 21. For the sake of clarity, however, Federal Defendants request this Court separately vacate that preliminary injunction order. Given its ruling, the Court should also issue final judgment in favor of the Corps dismissing with prejudice all counts in Plaintiffs' Complaint in Case No. 3:21-cv-00306. To the extent Plaintiffs request any relief as to the Corps, anything other than dismissal with prejudice would be contrary to this Court's conclusion in its summary judgment opinion that the Utility Regional General Permit "is, in fact, compliant with the requirements of NEPA" and that Plaintiffs' argument as to nationwide permit 12 "has been discredited by the Fourth, Tenth, and D.C. Circuits." Jan. 14, 2022 Op. & Order, ECF No. 175 at 41, 44.

examines will only occur after the transmission line is built. Vacatur and remand is thus sufficient.

As to FWS's decisions concerning the Upper Mississippi Wildlife Refuge, Plaintiffs are entitled to no additional relief beyond the declaratory relief already issued. The Compatibility Determination this Court found unlawful has already been revoked. As for the potential, future land exchange FWS was considering at the time of the Court's order and opinion, declaratory relief is sufficient to ensure the agency proceeds consistent with the Court's opinion. Federal agencies are presumed to follow the law, including this Court's opinion and order. And this Court lacks jurisdiction to issue any additional relief as to the Utilities' request for a land exchange.

In sum, this Court should (1) vacate and remand RUS's record of decision; and (2) grant no further relief beyond the declaratory relief already issued relating to FWS's management of the Refuge.[2]

## II.  ARGUMENT

Upon concluding that an agency action is arbitrary or capricious under the APA, 5 U.S.C. §§ 701-706, a court has discretion to craft the appropriate remedy. The Supreme Court has made clear that in crafting that remedy, however, a court may not "substitute its judgment for that of the agency" by dictating the manner of an agency's compliance with its legal ruling. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977). Instead, "the function of the reviewing court ends when an error of law is laid bare." *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952);

---

[2] Federal Defendants do not intend this submission as a concession that relief is appropriate in the first instance, and preserve their right to appeal from any aspect of the Court's opinion and order and final judgment.

*see also INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Applied to NEPA cases, this usually means that "the appropriate remedy is to remand the case to the agency to correct the deficiencies in the record and in its analysis." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 18 (2d Cir. 1997).

A.  **Vacatur and remand of RUS's record of decision will provide full redress for Plaintiffs' NEPA claim against RUS.**

The Court concluded that RUS's EIS was arbitrary and capricious because its statement of purpose and need was unduly restrictive. Jan. 14, 2022 Op. & Order, ECF No. 175 at 35-41. Vacating and remanding RUS's record of decision, which concluded RUS's environmental review in connection with its evaluation of Dairyland Power's application for financing, will provide Plaintiffs with complete relief.

Under the APA, courts "hold unlawful and set aside agency action" that is found arbitrary and capricious. 5 U.S.C. § 706(2)(A). As such, "[v]acatur of agency action is a common" form of relief in APA cases. *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1239 (10th Cir. 2017). As a form of equitable relief, vacatur is discretionary, and need not issue in every case. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1053 (D.C. Cir. 2021) (upholding district court's exercise of discretion in vacating easement based on insufficiencies in underlying NEPA review), *pet. for cert. docketed sub nom. Dakota Access, LLC v. Standing Rock Sioux Tribe,* No. 21-560 (U.S. Oct. 18, 2021). By the same token, where vacatur is warranted, it must be narrowly tailored to "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682,

702 (1979); *see Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable." (footnote omitted)).

      **1.**      **This Court has discretion to vacate RUS's record of decision, not the EIS itself.**

Should the Court exercise its discretion to vacate, that relief must be targeted at the final agency action at issue—RUS's record of decision. Importantly, Plaintiffs' complaint requests vacatur of the record of decision, not the EIS. *See* Compl., ECF No. 1 at 37 (Prayer for Relief ¶ 3). As such, that relief should be deemed sufficient. Indeed, vacatur of the record of decision means vacating RUS's finding in that final decision document that NEPA review is complete. *See* ROD007650 (noting that the "ROD is not an approval of the expenditure of Federal funds," but "concludes the agency's environmental review process in accordance with NEPA and RUS's Environmental Policies and Procedures"). Vacatur of the record of decision and remand to the agency for further consideration consistent with this Court's opinion is thus sufficient to fully remedy the violation this Court found.

Moreover, the record of decision—not the EIS—is the final agency action subject to judicial review here. Under the APA, judicial review is limited to "final agency action." 5 U.S.C. § 704. "An agency action is 'final' [only] when (1) the agency reaches the 'consummation' of its decisionmaking process and (2) the action determines the 'rights and obligations' of the parties or is one from which 'legal consequences will flow.'" *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1103 (9th Cir. 2007) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). In the context of NEPA, the consummation of the agency's decision-making process—and thus the final agency action subject to review under the APA—is issuance of a record of decision selecting one of the courses of action analyzed in the EIS. *See, e.g.*, *Or. Nat. Desert Ass'n v. BLM*, 625 F.3d 1092, 1118 (9th Cir. 2010) ("Once an EIS's analysis has been solidified in a ROD, an agency has taken final agency action."); 40 C.F.R. § 1505.2(a) (2018) (The ROD "[s]tates what the decision

was.").³ The EIS itself does not authorize any particular action and is not subject to judicial review until a record of decision has been issued. *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 156-57 (D.D.C. 2011) (dismissing challenge to an EIS alone as premature).

For these reasons, the Court has discretion to vacate RUS's record of decision, but not the EIS itself.

### 2. Injunctive relief against RUS is unnecessary and improper.

Plaintiffs' complaint asks that this Court "[e]njoin . . . RUS from providing any financial assistance, permits, or easements for the proposed CHC transmission line unless and until a final EIS is prepared and approved that fully complies with all NEPA requirements."⁴ Compl., ECF No. 1 at 37 (Prayer for Relief ¶ 6). Such relief is both inappropriate and unnecessary.

Injunctions in APA cases are inappropriate where they "do[] not have any meaningful practical effect independent of [the district court's] vacatur." *Monsanto*, 561 U.S. at 165-66. Where vacatur of the decision is "sufficient to redress [plaintiffs'] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Id.* The Eastern District of Wisconsin has applied this principle in denying a request for injunctive relief in a NEPA case. *1000 Friends of Wisconsin, Inc. v. U.S. Dep't of Transp.*, No. 11-C-0545, 2015 WL 2454271, at *12-13 (E.D. Wis. May 22, 2015).

Here, vacatur would mean that there is no longer a finalized NEPA process. Vacatur thus accomplishes everything that enjoining financing "unless and until" the agency "fully complies with all NEPA requirements" would. Compl., ECF No. 1 at 37 (Prayer for Relief ¶ 6). Indeed,

---

³ The 2018 version of CEQ's NEPA regulations, applicable in this case, are attached as Exhibit 1 to Federal Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment. ECF No. 115-1
⁴ The Complaint's request to enjoin "permits . . . or easements" is inapposite since no RUS permit or easement is before the Court.

RUS regulations require that "[t]he environmental review process must be concluded before the obligation of funds." 7 C.F.R. § 1970.11(b). And RUS is entitled to the presumption that it will comply with this Court's order and its own regulations on remand. *See, e.g.*, *Sierra Club v. Penfold*, 857 F.2d 1307, 1319 (9th Cir. 1988) (noting that courts cannot assume that because NEPA compliance was deficient in the past, the agency will not comply with NEPA in the future); *see also Croman Corp. v. United States*, 724 F.3d 1357, 1364 (Fed. Cir. 2013) ("The presumption that government officials act in good faith is enshrined in our jurisprudence." (citation omitted)). Vacatur and remand will thus fully remedy the defect this Court identified in the EIS's statement of purpose and need, making an injunction against RUS unnecessary.

Plaintiffs must also satisfy "the traditional four-factor test" for granting permanent injunctive relief. *Monsanto*, 561 U.S. at 157-58 (rejecting lower standard for NEPA cases because "[n]o such thumb on the scales in warranted"). Plaintiffs cannot demonstrate at least one essential element for injunctive relief with respect to their NEPA claim against RUS: irreparable harm.[5] In general, any harm must be "directly traceable to the" agency action challenged. *MediNatura, Inc. v. Food & Drug Admin.*, 998 F.3d 931, 945 (D.C. Cir. 2021); *see also Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir.

---

[5] Should the Court reach beyond the record of decision to issue relief pertaining directly to any future financing decision, such an injunction would also implicate the public interest in favor of RUS's financing mission, further militating against injunctive relief. *See* Decl. of Christopher A. McLean, ECF No. 119-1 (declaration of Acting Administrator for Electric Programs). Notably, such a broad injunction is beyond this Court's authority. *See Fed. Power Comm'n*, 344 U.S. at 20 ("the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration." (citation omitted)); *N. C. Fisheries Ass'n, Inc. v. Gutierrez*, 550 F.3d 16, 20 (D.C. Cir. 2008) (same); *Glob. Van Lines, Inc. v. I.C.C.*, 804 F.2d 1293, 1305 n.95 (D.C. Cir. 1986) ("[W]hen an agency committing an error of law has discretion to determine in the first instance how it should be rectified, the proper course is to remand the case for further agency consideration in harmony with the court's holding.").

2006) (holding plaintiff not entitled to relief with respect to a final agency action not challenged in the case, citing principle that "an injunction must be narrowly tailored to remedy the specific harm shown" (alteration in original) (citation omitted)). RUS's financing decision will occur—if at all—only after construction of the entire transmission line is complete. Thus, by definition, RUS's financing decision—for which it prepared the EIS and issued the record of decision— cannot be the source of any irreparable harm.[6] *See MediNatura, Inc.*, 998 F.3d at 945 (no irreparable harm where plaintiff "did not demonstrate that any harm it is suffering is directly traceable to the" agency action it challenges); *Neb. Dep't of Health & Hum. Servs.*, 435 F.3d at 330 (holding plaintiff not entitled to relief with respect to a final agency action not challenged in the case, citing principle that "an injunction must be narrowly tailored to remedy the specific harm shown" (alteration in original) (citation omitted)). Any request for an injunction as to RUS or its EIS fails for this additional reason.

Separately, Federal Defendants understand from discussions with Plaintiffs' counsel that Plaintiffs intend to seek an injunction of Intervenors' construction of the entire transmission line, whether authorized by federal permit or not. It is unclear what legal basis such an injunction would have in an APA case challenging federal agency actions. Irreparable harm justifying an injunction must be "directly traceable to" the agency actions at issue in the case, *MediNatura,*

---

[6] The showing required for irreparable harm is distinct from that required for standing, and thus this Court's conclusion that Plaintiffs established causation for purposes of standing does not signify they have also met the heightened showing required to show that "the alleged harm will *directly* result from the action which the movant seeks to enjoin." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (emphasis added). By contrast, to demonstrate standing, a plaintiff need only show alleged harms are fairly traceable. Op. & Order, ECF No. 175 at 22. And, at the remedy stage, a court examines each type of relief separately. The Court's conclusion that Plaintiffs demonstrated causation sufficient for standing purposes because "overturning the specific permits at issue would ameliorate at least some of plaintiffs' injuries," *id.* at 23, thus does not mean Plaintiffs have shown irreparable harm.

*Inc.*, 998 F.3d at 945, yet the vast majority of Intervenors' construction work does not require federal authorization. In any event, because any injunction of construction would run against Intervenors rather than Federal Defendants, this brief will not address the propriety of that request.

For the foregoing reasons, vacatur and remand of RUS's record of decision will provide Plaintiffs complete relief on their claim that RUS violated NEPA.

**B.    Declaratory relief is sufficient as to Plaintiffs' claim concerning the Refuge.**

As discussed, the ordinary remedy in APA cases is vacatur and remand. However, the Compatibility Determination that Plaintiffs challenge in this lawsuit has been withdrawn and any future land exchange not yet finalized, as this Court's opinion and order recognizes. *See* Op. & Order, ECF No. 175 at 4-5. Thus, with respect to the Court's conclusion that "the compatibility determination precludes the [CHC] transmission line from crossing the refuge by right of way or land transfer," *id.* at 44, there is no final agency action in place for the Court to vacate. Likewise, there is nothing to enjoin should Plaintiffs seek the extraordinary remedy of an injunction against FWS.

Declaratory judgment will afford Plaintiffs complete relief on their Refuge Act claim. "A declaratory judgment cannot be enforced by contempt proceedings, but it has the same effect as an injunction in fixing the parties' legal entitlements." *Badger Cath., Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010). Indeed, the Seventh Circuit has encouraged the use of declaratory judgments as a means of avoiding unnecessary "entry of a regulatory injunction." *Id.* ("If the entry of a regulatory injunction can be avoided by a simpler declaratory judgment, everyone comes out ahead."); *cf. Monsanto*, 561 U.S. at 165-66 ("If a less drastic remedy . . . was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted."). FWS is presumed to follow the law, including the Court's

8

declaratory judgment. *Sierra Club*, 857 F.2d at 1319. Declaratory relief thus constitutes a complete remedy for Plaintiffs on their Refuge Act claim.

Finally, remedies beyond declaratory relief, including remand, vacatur, and injunctive relief, are outside this Court's jurisdiction with respect to Plaintiffs' Refuge Act claim for two reasons. First, there is no final agency action under the APA. Though the Court determined that the putative land exchange under consideration at the time of the Court's ruling was ripe, the doctrine of ripeness and finality are distinct legal issues.[7] *Mountain States Tel. & Tel. Co. v. FCC*, 939 F.2d 1021, 1028 (D.C. Cir. 1991). The APA authorizes setting aside as unlawful only "final agency action," not "preliminary, procedural, or intermediate agency action." 5 U.S.C. §§ 704, 706(2); *Bennett*, 520 U.S. at 178 (APA prohibits challenges to decisions that are "merely tentative or interlocutory in nature" rather than the "'consummation' of the agency's decisionmaking process"). The requirement of finality "exists to protect agencies from undue judicial interference with their lawful discretion." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004). Because there is no final agency action before the Court with respect to Plaintiffs' Refuge Act claim, there is no agency action to vacate, remand, or enjoin.

Second, in APA cases, "the function of the reviewing court ends when an error of law is laid bare." *Fed. Power Comm'n*, 344 U.S. at 20. A court is not to "substitute its judgment for that of the agency" by dictating how that agency should comply with the law in the future. *Citizens to Pres. Overton Park, Inc.*, 401 U.S. at 416. Courts routinely caution against overly prescriptive remedies in APA cases for this reason. *See Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) ("The district court had no jurisdiction to order specific relief."); *Bennett v.*

---

[7] While Federal Defendants do not concede the Court's conclusion that it had jurisdiction to issue declaratory relief as to the compatibly requirements of the Refuge Act, even assuming that holding is correct, additional relief is outside the Court's jurisdiction.

9

*Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) ("We do not hold, of course, that HUD is required to take this precise series of steps, nor do we suggest that the district court should issue an injunction to that effect." (emphasis omitted)); *Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) ("Not only was it unnecessary for the court to retain jurisdiction to devise a specific remedy for the Secretary to follow, but it was error to do so.").

Indeed, in *Monsanto*, the Supreme Court held the district court exceeded its authority when it vacated both the agency decision before it to completely deregulate a specific crop and additionally "barred the agency from pursuing *any* deregulation" regardless of the particulars of any future agency action. 561 U.S. at 160-61. Such a broad and prospective injunction was impermissible under the APA because plaintiffs "brought suit under the [APA] to challenge a particular agency order," not some future order that would become subject to challenge only once it was finalized. *Id.* at 159-61 ("When the District Court entered its permanent injunction, APHIS had not yet exercised its authority to partially deregulate RRA. Until APHIS actually seeks to effect a partial deregulation, any judicial review of such a decision is premature."). So too here. Any additional relief with respect to the Refuge is thus impermissible.

### III.     CONCLUSION

This Court's conclusion that RUS's EIS relied on an impermissibly narrow statement of purpose and need will be fully remedied by vacatur and remand of the record of decision, precluding further relief. With respect to FWS, declaratory relief restating the judgment in the opinion and order is sufficient. The unique limitations on judicial review under the APA preclude additional relief, and no more is required to provide a complete remedy.

Federal Defendants attach proposed language for a final judgment. Federal Defendants read the Court's order and opinion as indicating an intention to carry forward its declaratory relief regarding the Refuge into any final judgment. Thus, Federal Defendants' proposed final

judgment has carried that relief forward verbatim (with the exception of what Federal Defendants believe to be a typographical error in that order regarding the spelling of the CHC transmission line). Inclusion of this component of relief, or any other, in Federal Defendants' proposed final judgment is not a concession that any relief is appropriate in the first instance.

Dated: January 31, 2022

Respectfully submitted,

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

/s/ Jacob D. Ecker
JACOB D. ECKER (TX Bar No. 24097643)
ANDREW A. SMITH (NM Bar No. 8341)
DEVON LEA FLANAGAN (DC Bar No. 1022195)
MIRANDA M. JENSEN (DC Bar No. 1617421)
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
jacob.ecker@usdoj.gov | (202) 305-0466
andrew.smith@usdoj.gov | (505) 224-1468
miranda.jensen@usdoj.gov | (202) 598-3071
devon.flanagan@usdoj.gov | (202) 305-0201

*Attorneys for Federal Defendants*