# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

NATIONAL WILDLIFE REFUGE ASSOCIATION,
DRIFTLESS AREA LAND CONSERVANCY,
WISCONSIN WILDLIFE FEDERATION, AND
DEFENDERS OF WILDLIFE

    Plaintiffs,

        v.

            Nos. 21-cv-00096-wmc
                & 21-cv-00306-wmc

RURAL UTILITIES SERVICE,            Consolidated
CHRISTOPHER MCLEAN, Acting Administrator,
Rural Utilities Service,
UNITED STATES FISH AND WILDLIFE SERVICE,
CHARLES WOOLEY, Midwest Regional Director,
and SABRINA CHANDLER, Manager, Upper
Mississippi River National Wildlife And Fish Refuge,
UNITED STATES ARMY CORPS OF ENGINEERS,
LIEUTENANT GENERAL SCOTT A. SPELLMON,
Chief Of Engineers And Commanding General, U.S.
Army Corps Of Engineers, COLONEL STEVEN
SATTINGER, Commander And District Engineer,
Rock Island District, U.S. Army Corps Of Engineers,
and COLONEL KARL JANSEN, Commander and District
Engineer, St. Paul District, U.S. Army Corps Of Engineers,

    Defendants,

        and

AMERICAN TRANSMISSION COMPANY, LLC,
DAIRYLAND POWER COOPERATIVE, & ITC
MIDWEST LLC,

    Intervenor-Defendants.

**MOTION OF PROPOSED AMICI CURIAE FOR LEAVE TO FILE A BRIEF SUPPORTING THE MOTION FOR AN INJUNCTION OF PLAINTIFFS DRIFTLESS AREA LAND CONSERVANCY, ET AL.**

Frank Jablonski
Progressive Law Group LLC
354 W. Main Street
Madison, WI 53703
P: (608) 258-8511
F: (608) 442-9494
frankj@progressivelaw.com

Carlos Pabellon
Deputy Corporation Counsel
210 Martin Luther King Jr. Blvd., Rm 419
Madison, WI 53703
P: (608) 266-4355
F: (608) 267-1556
Pabellon@countyofdane.com

1. Iowa County and Dane County (the Counties), which are bodies corporate under Wis. Stat. § 59.01, seek leave to file an Amicus Brief concerning the Conservation Groups' request for an injunction.

### Grounds for the Motion

2. The Counties are Parties to Dane County, Wisconsin, Case No. 19-CV-3418, *County of Dane, et. al. v. Public Service Commission of Wisconsin, et. al.* (State Case). The Counties' interests in that case will be materially affected by a decision on the Plaintiffs' (Conservation Groups') motion.

3. The Counties' specific interest here is in preventing impacts to the Counties' residents, and particularly landowners subject to eminent domain "takings" for the transmission line by preventing the Intervenor-Defendants (Utilities) from exploiting the unusual procedural posture of the State Case to create the "orchestrated train wreck" the District Court identified as the Utilities' strategy. Dkt. 175, p. 16.

4. Creation of that "wreck" will prejudice the Counties' interests in the State Case and immediately harm residents of the Counties through unwarranted eminent domain "takings" and the imposition of environmental impacts and blight.

5. The proposed attached Amicus Brief is desirable because it is appropriate for the Court to consider the public interest in weighing whether to provide equitable relief. "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than

they are accustomed to go when only private interests are involved."
*Virginian Ry. v. System Fed'n No. 40*, 300 U.S. 515, 552 (1937).

6. The matters asserted in the accompanying proposed brief are relevant to the disposition of the Conservation Groups' motion because protection of the public interest in the Court's decision is, as a practical matter, bound up with protection of the constitutional rights of residents of the Counties who are directly bearing the brunt of construction impacts. Because of unique circumstances, their property rights, of constitutional dimension, are being taken and burdened, and their property being directly impacted, despite two courts having issued injunctions against the Utilities' project and the Seventh Circuit Court of Appeals having determined, through denial of a Stay, that the Utilities have not shown themselves to be likely to succeed on appeal.

### Argument

7. The State Case is a court review of the administrative proceeding before the Public Service Commission of Wisconsin (PSC) through which Utilities secured a Wis. Stat. §196.491(3)(d)3 Certificate allowing them to build the Project in Wisconsin.

8. The Conservation Groups and Utilities in this case are also parties to the State Case.

9. Substantive issues in the State Case, notably the sufficiency of the Environmental Impact Statement's (EIS's) treatment of alternatives, overlap issues already resolved against the Utilities in this Court.

4

10. The insufficiency of the EIS was a basis for this Court's decision to vacate the Utilities' permits. Dkt. 175, p. 35.

11. The Court can be confident that the Wis. Stat. §196.491(3)(d)3 Certificate the Utilities are relying-on to construct the Project up to the boundary of the wildlife refuge in Wisconsin would be vacated in the State Case because this Court held the EIS to be inadequate due to, inter alia, insufficient development of alternatives and the State Court would do the same.

12. State court review of the merits of the EIS would reach the same conclusion as this Court because, *first*, the same standards for consideration of alternatives apply. Wis. Admin. Code § PSC 4.30(1)(a)) adopts by reference 40 C.F.R. pts. 1500-1508, the Federal Council on Environmental Quality (CEQ) guidelines for what an EIS must do. See also: *Wisconsin's Environmental Decade, Inc. v. Public Service Commission*, 79 Wis.2d 161, 175 - 176, 255 N.W.2d 917, 926 (1977): "[The EIS] should present the environmental impacts of the proposal and the alternatives in comparative form, thus sharply defining the issues and providing a clear basis for choice among options by the decisionmaker and the public.").

13. *Second*, while the standards an EIS must meet are the same, the review methodology in state court is more exacting. The deference commonly shown to administrative agencies has been abolished in Wisconsin. *Tetra Tech EC, Inc. v. Wis. Dep't of Revenue,* 2018 WI 75, 914 N.W.2d 21, 382 Wis.2d 496; Wis. Stat. §§ 227.10(2g) and 227.57(11).

14. Because i) substantive issues overlap, ii) the law governing whether the related EIS properly considered alternatives is the same, and iii) review of the EIS in the State Case will be conducted using a more exacting standard, a holding that vacates the Utilities' Certificate, and thus their ability to create the "orchestrated train wreck" referenced by this Court is virtually certain in the State Case when a state court addresses the merits.

15. The Counties are blocked from securing that holding because of the unique procedural posture of the State Case which prevents consideration of the merits.

16. The county court in the State Case explained how this procedural posture came about, stating: "What began as an arguably run-of-the-mill review of a PSC decision to issue a CPCN became extraordinary when Petitioners established an initial right to pursue discovery regarding whether PSC Commissioner Huebsch acted in a way that created an unconstitutional risk of the appearance of bias." Amici App'x p. 3 [PDF:5].

17. After determining Commissioner Huebsch's actions created a constitutionally impermissible risk of the appearance of bias, the county court granted a preliminary injunction to halt construction. Amici App'x pp. 1-2 [PDF:3-4]; Wis. Stat. 227.57(4). Implementation of the injunction, however, was dependent on a bond required by Wis. Stat. § 196.43, which the Court set at $32,000,000.00. The Counties supported the request for an injunction but could not afford a bond.

18. Following the granting of the preliminary injunction, but before the circuit court could hold a hearing on the procedural irregularities issue, the State Case was taken up by the Wisconsin Supreme Court on interlocutory review: "After this potential procedural defect came to light, I separated review of the merits of the PSC decision and temporarily stayed that issue to first address the alleged procedural irregularities. After discovery on the procedural irregularities nearly concluded and a hearing was scheduled to take evidence on this issue a few weeks later, the Wisconsin Supreme Court accepted former Commissioner Huebsch's request for interlocutory review of a variety of my decisions." Amici App'x p. 3 [PDF:5].

19. Interlocutory appeal before the Wisconsin Supreme Court remains pending.

20. The circuit court has determined that pendency of the interlocutory appeal prevents the circuit court from addressing the merits of the PSC decision: "After review of the briefs, I agree with the PSC and the Co-Owners that I lack competency to conduct the merits review or engage in further proceedings of substance until the Supreme Court returns the record to this Court." Amici App'x p. 4 [PDF:6].

21. The procedural posture of the State Case combined with the narrow scope of the injunction issued earlier by this Court allows the Utilities continue to rush forward with construction.

22. At this point: i) two injunctions have been issued against the Project, ii) this Court ruled against the Project on the merits, and iii) the Seventh Circuit

7

Court of Appeals has held that the Utilities have not shown their position to be likely to succeed on appeal. The logical inference is that it is virtually certain that a merits review in the State Case would lead to the Certificate being vacated and Project construction stopped.

23. The Utilities continue to construct the Project, burdening landowners using eminent domain to take their property, burdening ratepayers with costs, and burdening the rest of the residents of the Counties with the hazards and blight of transmission line construction and associated unwarranted environmental and aesthetic impacts.

24. The Counties' interest in protection of the constitutional rights of the Counties' most affected residents is, as a practical matter, entwined with the the Counties' interest in protecting environmental amenities and protecting all the Counties' residents from hazards and blight. The Counties' interest will thus be materially affected by the decision this Court makes on the Conservation Group's request for an injunction.

Based on the numbered paragraphs above, the Counties ask this Court to consider the Amicus Brief filed with this Motion.

Respectfully submitted June 3, 2022.

s/ *Frank Jablonski*
Frank Jablonski
Wisconsin State Bar No. 1000174
Progressive Law Group, LLC
354 W. Main Street Madison
Madison, WI 53703
(608) 258-8511

s/ *Carlos Pabellon*
Carlos Pabellon
Wisconsin State Bar No. 1046945
Deputy Corporation Counsel
210 Martin Luther King Jr. Blvd.
Madison, WI 53703
(608) 266-4355