Nos. 21-cv-00096-wmc & 21-cv-00306-wmc, Consolidated

---

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

Driftless Area Land Conservancy, et al.,

      Plaintiffs

                v.

Rural Utilities Service, et al.,

      Defendants

          and

American Transmission Company, LLC, et al.,
      Intervenor Defendants

_____

---

**Brief of *Amicus Curiae* the Citizens Utility Board of Wisconsin, Inc. Supporting Plaintiffs' Emergency Motion for an Injunction Temporarily Stopping Transmission Line Construction While the Utilities' Appeal is Pending**

---

Cara Coburn Faris
CUB
625 N. Segoe Road, Suite 101
Madison, Wisconsin 53705
faris@cubwi.org
Phone: (608) 957-8893

*Attorney for Amicus Citizens Utility Board of Wisconsin, Inc.*
*Supporting Plaintiffs*

Table of Contents

Identity/Interest of Amicus/Authority………………….…………….…………………………1

Statement on Authorship………………………………………………………………………..…2

Argument Summary……………………………………………………………………………...…3

Argument…………………………………………………………………………………..…………4

    I.    **Wisconsin customers are bearing the costs for construction on a project with speculative benefits and no public interest justification**………….…..…………..4

    II.    **The blank check is a disincentive to cost containment, and unlimited expenditures threaten to escalate the irreparable harm to Wisconsin customers**……………………………………………………………………..6

Conclusion……………………………………………………………………….……..…………9

Certificate of Service…………………………………………………………...……………..11

Identity/Interest of Amicus/Authority

CUB is the non-profit public interest advocate in all utility issues affecting Wisconsin's customers. CUB was created by the Wisconsin Legislature under Chapter 72, Laws of 1979 as a voice for previously unrepresented collective interests. The Legislature intended CUB to

> promote the health, welfare and prosperity of all the citizens of this state by ensuring effective and democratic representation of individual farmers and other individual residential utility consumers before regulatory agencies, the legislature and other public bodies and by providing for consumer education on utility service costs and on benefits and methods of energy conservation. Such purpose shall be deemed a statewide interest and not a private or special concern.

Wis. Stat. § 199.02.

CUB is further identified in Wis. Stat. § 196.315 as the "independent, nonpartisan consumer advocate for residential, small commercial, and small industrial energy utility customers" of Wisconsin. CUB advocates for cost-effective and just utility services on behalf of not only its roughly 1,900 members but also all residential, farm, and small business public utility customers of Wisconsin.

CUB intervened in the original Cardinal-Hickory Creek ("CHC") proceeding before the Wisconsin Public Service Commission ("PSCW" or "the Commission"), Docket No. 5-CE-146, to argue that the economic modeling that applicants American Transmission Company LLC ("ATC"), ITC Midwest LLC ("ITC"), and Dairyland Power Cooperative ("Dairyland"), (collectively "Utilities") presented to justify the CHC 345-kilovolt high-voltage transmission line did not demonstrate the Utilities' claimed need for CHC to transmit renewable energy. *See in Re Joint Application of American Transmission Company LLC, ITC Midwest LLC, and Dairyland Power Cooperative,* PSCW Docket No. 5-CE-146, *Final Decision*, at 4, 31 (Sep. 26, 2019) (PSCW REF: 376391) [hereinafter "*PSCW Final Decision*"]. CUB argued that without a demonstrated need, the project could not be deemed cost-effective, certifiable for public

1

convenience and necessity[1] (Wis. Stat. § 196.491(3)), or in the public interest. *See PSCW Final Decision* at 4, 31.

Approval for the routing through the refuge was rescinded in January 2022, yet construction continues, and costs rise. During this time period, CUB has thrice written the Commission on behalf of Wisconsin customers requesting that the Commission halt all construction activities on the Wisconsin portion of the line, rescind approval, and reopen the docket, pursuant to its broad authority under Wis. Stats. §§ 196.02 and 196.39(1), to reconsider the costs and benefits of CHC in light of these new developments. *CUB Letter Requesting Reopening of Docket* (January 28, 2022) (PSCW REF#:430102); *CUB Response to Utilities and MISO* (March 7, 2022) (PSCW REF#:432174); *CUB Letter Concerning Cost Overrun* (June 2, 2022) (PSCW REF#:439595).

To date, the Commission has taken no action in response to CUB's filed correspondence. CUB is urgently concerned with the effect ongoing CHC construction will have on Wisconsin customers. CUB thus writes, *amicus curiae,* in support of the Motion of the Driftless Area Land Conservancy, et al. ("Conservation Groups"), Plaintiffs, for a temporary injunction to stop CHC construction while this Court considers the consolidated appeals.

<u>Statement on Authorship</u>

The undersigned counsel certifies that she authored this entire brief and that no person, party, or parties' counsel contributed money to support preparation or submission of the brief other than CUB.

---

[1] The PSCW may not approve the issuance of a Certificate of Public Convenience and Necessity ("CPCN"), unless it finds that a proposed facility: 1) will not substantially impair the efficiency of the public utility; (2) will not provide facilities unreasonably in excess of future needs; (3) will not add to the cost of service without proportionately increasing the value or quantity of service; (Wis. Stat. § 196.49)  (4) satisfies the energy needs of the public; and (5) has a design and location that is in the public interest, considering alternatives and other factors. (Wis. Stat. § 196.491(3)).

<u>Argument Summary</u>

In deciding an injunction pending appeal, the Court must consider "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enterprises, Inc.*, 742 F.3d 763, 766 (7th Cir. 2014). CUB endeavors to not restate the Conservation Groups' arguments regarding each of the three prongs of this test. CUB writes to argue that Wisconsin customers would suffer irreparable harm if the injunction pending appeal is not granted and that the public interest unequivocally favors the Conservation Groups' motion.

PSCW approved the line at a total estimated cost of $492,216,000, an estimated $429,325,000 of which was attributable to the portion of the project to be located in Wisconsin. *PSCW Final Decision* at 87. Since the time that the approved routing through the refuge was rescinded in January 2022, the Utilities have not even proposed an alternative route that would connect the Iowa and Wisconsin portions, let alone gained approval for a complete connected transmission line. Instead, they have proceeded to build and spend for a project that has no clear public purpose and may prove to be of little to no use.

According to the Utilities' *Quarterly Progress Report for 1st Quarter of 2022* (April 28 2022) (PSCW REF#:436510), as of March 31, 2022 they had spent $276,969,267 of the approved $492,216,000. Less than one month later, on May 20, 2022 the Utilities filed a letter (*Cost Letter* (May 20, 2022) (PSCW REF#:438410)) with the PSCW informing the Commission of a "more than 10%" increase in the total estimated project cost for CHC.[2] This was the first

---

[2] *PSCW Final Decision* requires that "[i]f it is discovered or identified that the project cost, including force majeure costs, may exceed the estimated cost by more than 10 percent, the applicants shall promptly notify the Commission as soon as they become aware of the possible change or cost increase." *PSCW Final Decision* at 87, Order Point 2. The *Cost Letter*, which came over 2.5 years after CHC was approved, is the first and only information the Utilities filed regarding "possible change or cost increase." Such late

time since CHC approval that the Utilities brought the issue of a CHC cost overrun before the Commission. The Utilities' letter stated that they "are not able to accurately provide an updated total estimated completion cost for the Project" but "will likely have a reliable new total Project cost estimate" after proceedings before the Seventh Circuit and federal agencies have concluded. At this time, then, the Utilities appear to be operating without a cost cap.

Each day that CHC-related construction activities take place in Wisconsin, the Utilities incur costs with questionable benefits—costs that will to some extent be borne by the consuming public. As the time period during which construction continues, costs grow, unencumbered by cost containment requirements. CUB joins the Conservation Groups' call for an emergency injunction pending appeal because without it CUB's customers will suffer irreparable injury and because the public interest of Wisconsinites strongly favors granting the injunction.

<u>Argument</u>

## I.   Wisconsin customers are bearing the costs for construction on a project with speculative benefits and no public interest justification.

The Utilities have been on notice since the January opinion and order (*Nat'l Wildlife Refuge Ass'n et. al v. Rural Utilities Serv. et. al,* No. 21-CV-096-WMC (W.D. Wis. Jan. 14, 2022)) that CHC does not have legal authority to cross the Mississippi River. This critical river-crossing segment is required if CHC is to meet the originally-stated objective of "increas[ing] the transfer capability of the electric system between Iowa and southwest and southcentral Wisconsin by approximately 1,300 MW, thereby easing congestion, increasing competition and allowing the transfer of additional low-cost wind energy into the state." *PSCW Final Decision* at

---

"notification" of a vague, unspecified cost increase likely fails to satisfy the requirements of Order Point 2.

1. With no connection between Iowa and Wisconsin, the Project can transfer zero megawatts of power between Iowa and Wisconsin. Since the Project can no longer "support interconnection of planned renewable generation projects in Wisconsin" (*id.* at 30) it can no longer provide the benefits to Wisconsin customers that were presented in the CPCN application and relied upon by the Commission in its *Final Decision*. The Utilities have full knowledge that the Project can no longer be built as proposed and approved by the Commission yet "continue to clear the path for the CHC line up to the Refuge from both the Iowa and Wisconsin sides." *Nat'l Wildlife Refuge* at 10 (W.D. Wis. Jan. 14, 2022).

Stopping construction cannot be outside of the Utilities' contemplation and clearly was not outside of the Commission's. In approving CHC in 2019, the Commission recognized the possibility, in a project of this "complexity and scope," of the very situation that is occurring today. The Commission explicitly provided a mechanism, an independent environmental/agricultural monitor (IEM/IAM),[3] for stopping construction "if the work would violate this Final Decision or any regulatory permit condition. *See PSCW Final Decision* at 61.

The harm to Wisconsin customers from the ongoing imprudent construction, unchecked as of yet by the Commission, may be worsened by the fact that the permit revocation jeopardizes if not outright disqualifies CHC as a Multi-Value Project (MVP). Since CHC will no longer be able to relieve transmission congestion and bring renewable energy eastward into Wisconsin, it is likely that MVP cost allocation could not be applied to CHC costs and the costs would thus be

---

[3] The Commission reasoned and ordered "because of the complexity and scope of the project, it is reasonable to employ an independent construction monitor (a combined IEM/IAM) during the construction phase of the approved project. . . The IEM/IAM will report to and consult with the Commission to ensure the applicants adhere to this Final Decision and all permits. . .The IEM would have the authority to stop work on any construction spread if the work would violate this Final Decision or any regulatory permit condition. The applicants and their contractors shall promptly stop work on a construction spread if directed to do so by the IEM." *PSCW Final Decision* at 61.

borne by Wisconsin utility customers rather than being spread widely across the MISO region as originally contemplated. This cost recovery risk to customers is elevated due to CHC having been granted federal abandoned plant incentives pursuant to FERC Order No. 679.

Each day that construction of the line continues, the Utilities incur unnecessary, inefficient, or otherwise wasteful costs – costs that will ultimately be borne by the customers whom CUB represents and for whom the Commission is charged with ensuring safe, reliable, affordable, and environmentally responsible utility services. Beyond the substantial economic harm to Wisconsin customers, this threatens the integrity of the regulatory process, which is designed to be responsive to the needs of the public and, first and foremost, to protect the consumers.[4]

The Utilities' persistent failure to acknowledge this state of affairs and respond as good faith steward of Wisconsin customers' funds flaunts their responsibilities and privileges as regulated entities and demonstrates their willingness to exploit their economic leverage to benefit shareholders, all at the cost of the consuming public. Without a temporary injunction, Wisconsin customers are unprotected, and the economic and due process harm worsens each day. This is contrary to the public interest.

## II.   The blank check is a disincentive to cost containment, and unlimited expenditures threaten to escalate the irreparable harm to Wisconsin customers.

The *Cost Letter* that counsel for the Utilities filed with the Commission on May 20, 2022, further evidences the Utilities' relaxed stance toward spending. It states that they "have identified that the Project cost at completion will exceed the total estimated cost of $492,216,000 approved

---

[4] "[T]he primary purpose of the public utility laws in [Wisconsin] is the protection of the consuming public." *Wis. Environmental Decade v. Public Service Comm'n*, 81 Wis.2d 344, 351, 260 N.W.2d 712 (1978) (citing *Wisconsin Power & Light Co. v. Public Service Comm'n*, 45 Wis.2d 253, 259, 172 N.W.2d 639 (1969).

in the Final Decision by more than 10%" but does not specify a current estimated cost of completion. Except for the assurance that CHC costs will likely exceed $541,438,000, the Commission and the public have no information as to the Utilities' estimated cost of completion. Furthermore, given that the Utilities currently have no legal path through the refuge, it is unclear what is meant by "completion" in this context. The project is operating without a route, expected benefits, or a cost cap.

Nor do the Utilities provide an accounting or timeline of the cost increases mentioned in the *Cost Letter*. They simply explain that "[t]he anticipated cost increase is primarily driven by material price increases and on-going legal expenses related to multiple challenges to the Project's federal and state authorizations" and then briefly discuss steel, conductor, and gas insulator prices and "protracted litigation," for which they assume no responsibility. The Utilities refer to price estimates "used in 2018 when creating the Project's total estimated cost" but offer no temporal or categorical information on CHC's budgeting in the years between 2018 and the present.[5]

CUB is concerned that the Utilities, now that they have "notified" the Commission, perceive that they have a blank check to proceed with CHC construction with no defined purpose or benefit and, now, no cost cap. This makes all but certain the likelihood of growing harm to customers due to the Utilities' imprudent, unreasonable, wasteful spending.

Both the Commission and the Federal Energy Regulatory Commission ("FERC") have recently acknowledged the need to better curtail such runaway spending. In the *Final Decision* for Docket No. 5-BS-254, issued on May 25, 2022, the Commission did away with the 10%

---

[5] The Utilities could at least provide current estimated costs of completion broken into the same categories as they use in their quarterly progress reports presenting costs-to-date. See, e.g., *1Q2022 Progress Report*, Docket No. 5-CE-146 (Apr. 28, 2022) (PSC REF#:436510).

project cost cushion, instead ordering that "applicants shall promptly notify the Commission as soon as they become aware of" any possibility that costs "may exceed the current estimate" presented in the application. *In re Joint Application of Wisconsin Electric Power Company, Wisconsin Public Service Corporation, and Madison Gas and Electric Company for Approval to Acquire Ownership Interests in the Paris Solar Generating and Battery Energy Storage System*, Docket No. 5-BS-254, *Final Decision* at 18, Order Pt. 7 (May 25, 2022) (PSCW REF#:438529). The Commission wrote:

> In addition to contractual protections intended to *shield ratepayers from unexpected construction cost overruns*, the Commission finds it reasonable to impose reporting conditions *so that cost overruns can be closely monitored* and reviewed by the Commission in future rate case proceedings. (emphasis supplied)

*Id*.

FERC, in a Notice of Proposed Rulemaking ("NOPR") issued April 21, 2022, notes concern that the benefits of construction-work-in-progress ("CWIP") Incentives for transmission projects "may shift too much risk to consumers to the benefit of public utility transmission providers in a manner that renders [FERC]-jurisdictional rates unjust and unreasonable." 179 FERC ¶ 61,028 at 259 ¶ 332. *Notice of Proposed Rulemaking, Building for the Future Through Electric Regional Transmission Planning and Cost Allocation and Generator Interconnection.* Docket No. RM21-17-000. (2022). FERC describes a scenario similar to CHC, explaining that during the construction of the regional transmission facilities, ratepayers do not receive benefits from the regional transmission facilities, while simultaneously ratepayers directly finance the construction under the CWIP Incentive. Should the regional transmission facilities not be placed in service, then ratepayers will have financed the construction of such facilities that were not used and useful, while ultimately receiving no benefits from such facilities. Id. at 258-259 ¶ 331.

A separate concurrence explicitly cites the CHC Project changes, pointing out the "consumer protection" concern with the fact that "CWIP is, of course, passed through as a cost to consumers, making consumers effectively an involuntary lender to the developer." Concurring Opinion of Commissioner Mark C. Christie at 6-7 ¶ 15. The opinion notes that "[c]onsumers should be protected from paying CWIP costs during this potentially long period before a project actually enters service, if it ever does" and that "states are not just 'stakeholders'" in regional transmission project planning and cost allocation. Rather, "[s]tate regulators have the duty to act in the public interest and states alone are sovereign authorities with inherent police powers to regulate utilities through their designated state officers." (*Id.*)

The Commission and FERC have identified the CHC cost overruns and the Utilities' insistence on moving forward as risky, harmful to consumers, unreasonable, and contrary to the public interest. That the Utilities are operating without a budget and are not willing to provide a cost estimate evidences that they have no concern whatsoever with cost, the interests of customers and the public, or the integrity of the regulatory process. The Utilities have demonstrated their unwillingness to act in good faith to curb this unnecessary, inefficient, and wasteful spending because they stand to profit while the costs get passed through to Wisconsin customers.

<u>Conclusion</u>

In the original CHC proceeding before the PSCW, CUB argued that the proposed project did not merit approval. Today, the Utilities are spending Wisconsin customers' funds on construction of a project without a route, expected benefits, or a cost cap. This is harming Wisconsin customers, who have limited leverage in the face of monopoly for-profit investor-owned utilities. This is not in the public interest. Quick action is necessary to protect the

customers whom CUB represents. Each day that construction of the line continues, the unjust, unreasonable, and imprudent costs that the Utilities incur grow while the benefits of CHC remain in question. Time is a critical factor in mitigating the ongoing harm to Wisconsin customers.

For the above-stated reasons, and for the reasons set forth in the Conservation Groups' brief, CUB supports, *amicus curiae,* the Conservation Groups' Motion for a temporary injunction to stop CHC construction while this Court considers the consolidated appeals.

Respectfully submitted,

/s/ *Cara Coburn Faris*

Cara Coburn Faris
CUB
625 N. Segoe Road, Suite 101
Madison, Wisconsin 53705
faris@cubwi.org

Phone: (608) 957-8893
*Attorney for Amicus Citizens Utility*
*Board of Wisconsin, Inc. Supporting*
*Plaintiffs*

June 9, 2022

Certificate of Service

I hereby certify that the electronic original of the foregoing Motion for Leave to file as *Amicus Curiae* and the accompanying *Amicus Curiae* Brief was filed with the United States District Court for the Western District of Wisconsin on this 9th day of June, 2022, through the CM/ECF electronic filing system, and thus also served on counsel of record.

Respectfully submitted,

/s/ *Cara Coburn Faris*

Cara Coburn Faris
CUB
625 N. Segoe Road, Suite 101
Madison, Wisconsin 53705
faris@cubwi.org

Phone: (608) 957-8893
*Attorney for Amicus Citizens Utility Board of Wisconsin, Inc. Supporting Plaintiffs*

June 9, 2022

11